**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**AHMEENA TAYLOR,**

        **Plaintiff,**

**-vs-**                                                                              Case No.  6:11-cv-205-Orl-DAB

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is  is **REVERSED and REMANDED.**

## I.     BACKGROUND

### A.     Procedural History

Plaintiff filed for SSI benefits on February 26, 2007, alleging an onset of disability on January 1, 2007, due to due to seizures, ovarian cancer, blindness in the right eye, high blood pressure, and anemia. R. 126-28, 143, 147. Her application was denied initially and upon reconsideration. R. 64-79. Plaintiff requested a hearing, which was held on October 29, 2009, before Administrative Law

Judge Deborah Arnold (hereinafter referred to as "ALJ"). R. 33-58. In a decision dated January 13, 2010, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 12-26. Plaintiff timely filed a Request for Review of the ALJ's decision and the Appeals Council denied Plaintiff's request on December 16, 2010. R. 1-5. Plaintiff filed this action for judicial review on February 8, 2010. Doc. 1.

### B.     Medical History and Findings Summary

At the time of the hearing, Plaintiff was forty-two years old and had graduated from high school. R. 36-37. Plaintiff had been employed as an administrative clerk, a receptionist, an order clerk, a manager of a retail store, a manager of an office, and a salesperson in a jewelry store. R. 99, 230.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of seizures, ovarian pain and problems, blindness in the right eye[1], high blood pressure, anemia, and affective/mood disorders. R. 64, 70, 188, 147. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a borderline personality disorder; bipolar disorder; obesity; degenerative disc disease; a history of drug addiction and alcoholism; a history of eye cataracts and seizures, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 17. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work; however, she could not work on unprotected heights or around dangerous moving machinery, she was limited to simple, one-to-three step tasks and superficial interactions with coworkers and the general public. R. 19-20. Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R.

---

[1] Plaintiff's arguments that the ALJ erred in not accounting in the RFC for her impaired vision of 20/200 in the right eye (*see* R. 504) are without merit because, as the Commissioner argues, her condition had improved with cataract surgery and she testified she could see well in that eye. R. 40.

24.  Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a housekeeper, a cafeteria attendant, and a shot bagger.  R. 25.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 26.

Plaintiff now asserts two points of error.  She claims the ALJ erred by finding she had the RFC to perform light work with certain restrictions even though the state agency physicians opined Plaintiff would have a more restrictive residual functional capacity.  Plaintiff also argues that the ALJ erred by relying upon the testimony of the vocational expert (VE) when the hypothetical question to the VE failed to include all of Plaintiff's impairments.  For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   RFC and the state agency non-examining physician opinions.

Plaintiff claims that the ALJ should not have found her able to perform a light work with simple, one-to-three step tasks and limited to superficial interaction with coworkers and the general public when the state agency physicians opined the claimant would have a more restrictive mental residual functional capacity. The Commissioner argues that the ALJ's RFC finding was consistent with the RFC assessments provided by the state agency consultants.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

In this case, the ALJ determined Plaintiff's residual functional capacity was light work with certain restrictions:

> The claimant can lift twenty pounds occasionally and ten pounds frequently but cannot work on unprotected heights or around dangerous moving machinery. Further, the claimant can perform simple, one-to-three step tasks and have only superficial interaction with coworkers or the general public.

R. 20. The ALJ also found that Plaintiff was not capable of performing past relevant work, but that there were other jobs in the national economy that Plaintiff could perform, based on VE testimony. R. 24-25.

Plaintiff argues that although the ALJ found the opinions of the state agency physicians to be "persuasive" (R 24), the ALJ erred by failing to include all of the limitations outlined by the state agency physicians, Theodore Weber, Psy.D. and Dr. Pamela D. Green, in Plaintiff's RFC.

On August 21, 2007, Dr. Weber noted Plaintiff had moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. R. 401. Dr. Weber opined that Plaintiff would be moderately limited in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others. R. 405-06. Another state agency psychologist, Dr. Green, on February 23, 2008 noted that Plaintiff had moderate limitations in many of the same areas and opined: Plaintiff was moderately limited in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others; she also had moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. R. 483-84, 497.

Plaintiff argues that the ALJ erred by failing to include all of these moderate limitations – other than Plaintiff could "perform simple, one-to-three step tasks and have only superficial interaction with coworkers and the general public" (R. 20) – even though the ALJ found both of these psychologist's opinions to be persuasive. R 24.  Plaintiff argues that in particular, the ALJ failed to

discuss or include her moderate limitations in the ability to maintain attention and concentration for extended periods; her inability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others. R. 405-06, 483-84. Although both of the state agency physicians noted that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace and one or two episodes of decompensation (R. 401, 497), Plaintiff argues that it is not clear how the ALJ factored these limitations into the ALJ's residual functional capacity assessment, or if the ALJ considered them at all.

The Commissioner argues that the ALJ adequately accounted for Plaintiff's difficulties with social functioning and concentration, persistence, and pace in the RFC assessment and in the hypothetical question by limiting Plaintiff to simple, one-to-three step tasks and superficial interaction with coworkers and the general public (R. 19-20, Finding No. 4). The Commissioner highlights the ALJ's adoption of portions of Section III (as opposed to Section I) of the MRFC assessments[2] that opined (by Dr. Weber) that Plaintiff was able to understand and remember detailed instructions; carry out simple instructions; make simple, work-related decisions; remember locations and work-like procedures; avoid hazards; and interact appropriately with the general public. R. 24, 407. The ALJ noted Dr. Green's opinion that, although Plaintiff had reduced concentration, persistence, and pace with somatic concerns, she could understand short, simple, routine data; had social skills; and was able to travel the community. R. 24, 484. The Commissioner also argues that the ALJ explained how the non-examining psychologists' opinions showed Plaintiff could do the work in the ALJ's mental RFC finding despite the PRTF (Section I) findings.

---

[2] Given the Court's ruling, it does not reach the Commissioner's argument that "the notations in Section I are summary conclusions" and the ALJ need only consider the detailed explanation of the degree of limitation for each category from Section III.

An ALJ cannot generally account for a claimant's deficiencies in concentration, persistence, and pace by restricting the vocational expert's inquiry to simple, routine tasks or unskilled work *unless* the medical evidence demonstrates that a claimant retains the ability to engage in simple, routine, repetitive tasks or unskilled work despite deficiencies in concentration, persistence, and pace and these restriction *sufficiently account* for such deficiencies. *See Winschel v. Commissioner*, 631 F.3d 1176, 1181 (11th Cir. 2011) (holding that where an ALJ finds a moderate impairment in concentration, persistence or pace, he must indicate that the medical evidence suggested the claimant could work despite the limitation); *Richter v. Commissioner of Social Security*, No. 09-12674, 379 Fed.Appx. 959, 961-62 (11th Cir. 2010) (unpublished) (same).

In discussing Plaintiff's mental impairment, the ALJ described Plaintiff's mental limitations:

With regard to concentration, persistence or pace, the claimant has moderate difficulties. On August 21, 2007, Ms. Jackson [her drug treatment counselor] stated that the claimant has some problems with comprehension, occasionally needs to have directions repeated, and has some decreased concentration and attention but is able to maintain deadlines and schedules, arrives on time for all meetings, and keeps track of her appointments (Exhibit 4E, p. 1). Ms. Jackson opined that the claimant is able to follow written and verbal instructions but does better with simple verbal instructions (Exhibit 4E, p. 1). On February 2, 2008, Ms. Jackson opined that the claimant is unable to focus because of pain and vision problems and is unable to pay bills, use a checkbook or money orders, or keep a job because of her health problems (Exhibit 7E, p. 1-4). Further, Ms. Jackson stated that the claimant sometimes must have written instructions spoken to her but admitted that the claimant follows spoken instructions very well and does not require reminders to take care of personal needs and grooming or to take medication (Exhibit 7E, p. 1-3). The claimant alleged that she sometimes finishes what she starts and can follow verbal instructions when they are explained slowly but denied requiring special reminders to take care of personal needs and grooming or taking medicine on July 27, 2007 (Exhibit 3E, p. 3-6). However, the claimant stated that she occasionally needs reminders to take medication on February 2, 2008 (Exhibit 8E, p. 3-5). Rosimeri Clements, Psy.D, noted that the claimant demonstrated fair recall of recent and remote events during the consultative psychological examination, suggesting no severe short-term or long-term memory problems (Exhibit 9F, p. 3). Finally, the longitudinal record repeatedly shows the claimant exhibited good attention and concentration at most examinations (Exhibits 16F, 25F). The undersigned finds that the claimant's ability to sustain focused attention sufficiently long to permit timely and appropriate completion of tasks commonly found in work settings is moderately limited.

> As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation, each of extended duration. Repeated episodes of decompensation, each of extended duration, is defined as three episodes within one year, or an average of once every four months, each lasting for at least two weeks. On February 22, 2007, the claimant was treated at the emergency department after drinking, ingesting a bottle of Motrin, and reporting that she wanted to die (Exhibit 2F). However, she was discharged within twenty-four hours (Exhibit 2F, p. 10). She was hospitalized on September 19, 2007, September 28,2007, October 9, 2007, and October 26, 2007 (Exhibits 14F, 16F). However, two of these were voluntary hospitalizations and none lasted at least two weeks (Exhibits 14F, 16F). Therefore, the undersigned finds that the claimant has experienced one to two episodes of decompensation, each of extended duration.
>
> * * *
>
> Dr. Clements observed the claimant to be alert and well-oriented, with no symptoms of psychosis or suicidal or homicidal tendencies (Exhibit 9F, p. 1, 3). Further, the claimant demonstrated fair recall of recent and remote events, *suggesting no severe short-term or long-term memory problem* (Exhibit 9F, p. 3).

R. 18-19, 22.

Although the ALJ cited some of the findings from Dr. Clements' consultative examination report, she failed to cite the complete findings which indicated Plaintiff had experienced more episodes of decompensation (by Plaintiff's report) and the equivocal nature of the consultative examiner's memory findings, which recommended "memory testing to rule out an impairment":

> Mental health evaluations and treatment for drug abuse, anger management, and anxiety since she was 16 years old via medication, psychiatric hospitalization, individual therapy, group therapy. She has been psychiatrically hospitalized about 10 times for suicide attempts and depression. . . . She added that she was in "detox" 5 times last year. . . . Fair recall of recent and remote events was demonstrated, suggesting no severe short-term or long-term memory impairment. Speech and thought processes were logical but not always coherent. She was at time [*sic*] difficult to understand due to her language expression problems. She also had word finding problems. Articulation problems were noticed as she had problems pronouncing certain sounds.
>
> * * *
>
> Her prognosis is poor due to her untreated mental health problems and her long history of drug dependence. The claimant has a significant history of mental health and substance abuse problems due to her chaotic and abusive childhood. She has no family support due to damaging these relationships as a result of her drug dependence. The only support she is receiving at this time is from her treatment program and she is in danger of being kicked out due not being able to pay for it. The claimant meets criteria

> for a major depressive episode. She also meets criteria for borderline personality disorder. She will need extensive therapy to address her parasuicidal behavior and emotionality. *In regards to her to reported memory impairment, it is vital that she be stable emotionally and have adequate sleep prior to memory testing as these factors will interfere with test taking ability.*
>
> The evaluator recommends the following: *Immediate psychiatric evaluation for the appropriate medication*; Individual therapy to address her mood and personality dysfunction; Continue in substance abuse treatment with aftercare once she has completed the program*; Memory testing to rule out impairment once she is stable and able to sleep*; Referral to a pain management doctor to address her significant pain; Medical treatment; Health insurance.

R. 387-88 (emphasis added – dated July 9, 2007). Dr. Clements diagnosed Plaintiff with Major Depressive Disorder, recurrent, moderate, and Borderline Personality Disorder, with Sleep Disorder Due to Chronic Pain, Insomnia Type [rule out] memory impairment. R. 388. No additional memory testing was performed, the ALJ concentrated only on Dr. Clements' notes that Plaintiff "demonstrated fair recall of recent and remote events" suggesting no severe short-term or long-term memory problem," and the ALJ ignored Dr. Clements' recommendation of "memory testing to rule out a problem." R. 388. Particularly in Plaintiff's case, where CT scans of her brain indicated bullet fragments were present (R. 355, 359, 467) and she had trouble with her "speech and thought processes" which "were logical but not always coherent," and she had language expression problems, word finding problems, articulation problems, and problems pronouncing certain sounds. R. 387. The ALJ's failure to accurately reflect Dr. Clements' restrictions, or order the memory testing that Dr. Clements recommended, was not based on substantial evidence.

Neither of the opinions of the non-examining state psychologists, Drs. Weber and Green, reflect recognition of Plaintiff's "multiple" Baker Act commitments. Dr. Weber's Mental RFC assessment, dated August 21, 2007 noted:

> She is able to remember locations and work-like procedures, able to understand and remember detailed instructions, and is able to carry out simple instructions, and make simple work related decisions. She will very likely have some difficulty carrying out detailed instructions, and may have some difficulty maintaining attention and concentration for extended periods.

-10-

> She does have some difficulty getting along with co-workers and peers, however she is able to use public transportation, take nl precautions against hazards, and interact appropriately with the general public.
>
> Although she does have a severe MDI, overall clinical findings, ADLs, MSE, and observations support she should be capable to of completing S/R/R/T. There is *no documented hx of admissions*, she should obtain psychiatric tx, continue substance tx and abstain from polysubstance abuse.

R. 407 (emphasis added). Dr. Green, the other state non-examining mental health physician, noted:

> She reported 10 hospitalizations at recent CE, *however evidence does not support her reports and there is only evidence of one ER visit* due [to] binge drinking and SI. . . . No memory impairments, had some word finding difficulty and articulation, she had full range of appropriate affects and appeared in no acute mental distress.

R. 499 (emphasis added). Dr. Green appended an update on reconsideration noting Plaintiff's hospitalization from September 28 to October 3 for bipolar disorder and borderline personality traits. R. 499.

Although both Drs. Weber and Green found there was "no documented history of admissions," their were several references in the mental health treatment records to Plaintiff's repeated commitments for suicidal thoughts and cutting herself. Records from Seminole Community Mental Health Center state, "Patient has history of multiple admissions and Baker Acts *to our Crisis Unit here* and at Lakeside and Florida Hospital and different treating facilities. She tried to cut her wrists at younger age and she started having suicidal thoughts and gestures since age 13." R. 476. Plaintiff reported having a mental illness from her teenage years," and "she had cut on her wrists in the past also and *had tried to overdose a year ago*." R. 478. Records from 2002 indicate that Plaintiff had been Baker Acted at Seminole Community Mental Health Center after she got into an argument and decided "to cut on herself." R. 486. She gave a history of having "cut herself in the past." R. 480.

Records from Lakeside Behavioral Healthcare from September-October 2007 indicate Plaintiff was admitted to the locked Crisis Stabilization Unit where she was admitted complaining of suicidal ideation and threats to cut herself, but without a specific plan. R. 431, 450. She had a history of prior

-11-

inpatient treatment at the University of Pennsylvania in 1986 when she was 18 years old. She also reports a history of "at least 10 [Baker Act admissions] to date. She has been treated at Florida Hospital, South Seminole and [Lakeside Behavioral Health]. Old records are not currently available." R. 450. A Comprehensive Psychiatric Evaluation performed on September 17, 2008 at Orange Blossom Family Health also noted Plaintiff's report of past psychiatric history of treatment at Seminole Community Mental Health Center and Lakeside Behavioral Healthcare. R. 555. The ALJ's reliance on the opinions the non-examining state psychologists, who failed to recognize Plaintiff's multiple hospitalizations, was in error and her opinion was not based on substantial evidence[3].

### B. Hypothetical to the VE

Plaintiff contends that the ALJ erred in relying on the testimony of the Vocational Expert after posing a hypothetical question that did not adequately reflect Plaintiff's limitations. At step four of the five-step sequential evaluation process, the ALJ must determine whether or not the claimant is able to return to his or her past relevant work. If the claimant is found to be able to perform the duties of her past relevant work, then he or she is considered not disabled and therefore ineligible for benefits. The claimant bears the burden of proving the inability to perform his or her previous work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). The claimant must show the inability to do the type of work performed in the past, not merely the specific job he or she held. *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986). The ALJ must consider all of the duties of the past work and evaluate the claimant's ability to perform those duties in spite of the impairments. *Lucas*, 918 F.2d at 1574 n. 3.

---

[3] The Commissioner argues that Plaintiff has effectively waived any challenge to the ALJ's interpretation or characterization" of Drs. Weber and Green's narrative opinions. *See* Doc. 20 at 12. Though couched in somewhat different terms and with emphasis on other points, Plaintiff has raised the issue of the ALJ's assessment of Plaintiff's RFC, and the Court must consider all of the evidence of her mental RFC in determining whether the ALJ's decision is supported by substantial evidence.

-12-

On remand, once the ALJ has properly determined Plaintiff's mental residual functional capacity for memory, concentration, persistence, and pace, and ability to follow complex and simple directions, those limitations at the appropriate level are to be factored into limitations in a hypothetical posed to the VE.

## V.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES and REMAND** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 8, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record